USDC SDNY
DOCUMENT
ELECTRONICALLY FILE
DOC #:
DATE FILED: 4/9/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRUSTEES OF THE NATIONAL RETIREMENT FUND,

Plaintiffs,

-against-

LE PERIGORD, INC. d/b/a LE PERIGORD RESTAURANT and JOHN DOES 1-10 (all other trade or businesses under common control with LE PERIGORD, INC. d/b/a LE PERIGORD RESTAURANT),

Defendants.

No. 16-cv-06921 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Trustees of the National Retirement Fund ("Plaintiff" or the "Fund") filed the instant action against Defendants Le Perigord, Inc. d/b/a Le Perigord Restaurant Inc. and John Does 1-10 (collectively, "Le Perigord" or "Defendants") alleging that Defendants' actions triggered withdrawal liability under the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), resulting in $1,757,369.00 being due to the Fund. Before the Court is Plaintiff's motion for summary judgment. Defendants do not oppose the motion. For the following reasons, Plaintiff's motion is GRANTED.

## BACKGROUND

Le Perigord, a restaurant, was a party to a collective bargaining agreement with the UNITE HERE Local 100 (the "Union"). (Plaintiff's Rule 56.1 Statement, ECF No. 29, ("Pls.' 56.1"), ¶¶ 2, 4.) Pursuant to the collective bargaining agreement, Le Perigord was required to make contributions to the Fund, which sponsors a multi-employer pension plan (the "Plan"), of

which the Union was a member. *(Id. ¶ 4.)* In the event that an employer withdraws from the Plan, the MPPAA provides for the Fund to collect withdrawal liability from the employer. *(Id. ¶ 3.)*

Le Perigord made the required contributions to the Fund under the collective bargaining agreement through and including August 31, 2015. *(Id. ¶ 4.)* On or about August 31, 2015, Le Perigord permanently ceased to have an obligation to contribute to the Fund, resulting in a complete withdrawal from the Plan and the incurrence of withdrawal liability within the meaning of 29 U.S.C. § 1381. *(Id. ¶ 5.)* In or about 2016, the Fund subsequently determined that Le Perigord had incurred withdrawal liability and sent a notice on April 29, 2016, by certified mail, return receipt requested, notifying Le Perigord of its determination and demanding payment in the amount of $1,757,369.00. *(Id. ¶¶ 6-7.)* Payment was to be made according to a statutorily defined schedule of quarterly payments, with the first payment due by June 1, 2016. *(Id. ¶ 7.)* The Fund did not receive the first payment. *(Id. ¶ 7.)*

On June 3, 2016, by certified mail, return receipt requested, the Fund notified Le Perigord of its failure to pay, and that if such failure was not cured within 60 days, Le Perigord would be in default. *(Id. ¶ 8.)* Le Perigord never sent payment. *(Id. ¶ 8.)* Following said notifications, the Fund did not receive any withdrawal liability payments as required by the Notices and Demand. *(Id. ¶ 8.)* Le Perigord has neither requested review or initiated arbitration of its withdrawal liability as permitted pursuant to Section 4221 of ERISA, 29 U.S.C. § 1401. *(Id. ¶¶ 9-11.)*

## SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving

2

party bears the initial burden of pointing to evidence in the record, "including depositions, documents [and] affidavits or declarations," *id.* at 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also support an assertion that there is no genuine dispute by "showing . . . that [the] adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). If the moving party fulfills its preliminary burden, the onus shifts to the non-moving party to identify "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal citation and quotation marks omitted). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *accord Benn v. Kissane*, 510 F. App'x 34, 36 (2d Cir. 2013) (summary order). Courts must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in its favor." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted). In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness's credibility. *Anderson*, 477 U.S. at 249. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Id.* at 250.

Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The party asserting that a fact is genuinely disputed must support their assertion by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "Statements that are devoid of any specifics, but replete with

3

conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted).

"The fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). "Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Id.* (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)) (emphasis in original).

## DISCUSSION

### 1. Withdrawal Liability

The Plan is a multiemployer pension plan under ERISA and the MPPAA, "in which multiple employers pool contributions into a single fund that pays benefits to covered retirees who spent a certain amount of time working for one or more of the contributing employers." *Trustees of Local 138 Pension Trust Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 129 (2d Cir. 2012). Multiemployer plans are advantageous in industries like the one at issue here – the restaurant and catering industry – "where companies frequently go in and out of business and employees transfer among employers, making a single-employer plan 'unfeasible.'" *Nat'l*

*Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp.*, 938 F. Supp. 2d 361, 366 (E.D.N.Y. 2013) (quoting *Trustees of Local 138 Pension Trust Fund*, 692 F.3d at 129). However,

> [a] key problem of ongoing multiemployer plans, especially in declining industries, is the problem of employer withdrawal. Employer withdrawals reduce a plan's contribution base. This pushes the contribution rate for remaining employers to higher and higher levels in order to fund past service liabilities, including liabilities generated by employers no longer participating in the plan, so-called inherited liabilities. The rising costs may encourage—or force—further withdrawals, thereby increasing the inherited liabilities to be funded by an ever-decreasing contribution base.

*Trustees of Local 138 Pension Trust Fund*, 692 F.3d at 129 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 722 n.2 (1984)). To deal with this issue, Congress enacted the MPPAA, which provides that when "an employer withdraws from a multiemployer plan . . . [it will be] liable to the plan in the amount determined . . . to be the withdrawal liability." 29 U.S.C. § 1381. "Withdrawal liability is the withdrawing employer's proportionate share of the pension plan's unfunded vested benefits." *Trustees of Local 138 Pension Trust Fund*, 692 F.3d at 130.

In order to grant summary judgment to the Fund on the issue of withdrawal liability, the Fund "must establish three elements: '(1) that defendants constituted an 'employer' under MPPAA prior to the withdrawal; (2) that defendants received notice of a withdrawal liability assessment against them; and (3) that defendants failed to initiate arbitration[1] as required by [the] MPPAA.'" *Nat'l Integrated Grp. Pension Plan*, 938 F. Supp. 2d at 366 (E.D.N.Y. 2013) (quoting *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc.—Pension Fund v.*

---

[1] "Employers that wish to challenge a withdrawal liability assessment must do so through a mandatory system of arbitration." *Nat'l Integrated Grp. Pension Plan*, 938 F. Supp. 2d at 361 (citing 29 U.S.C. § 1401(a)(1)). "Where a defendant does not initiate arbitration, it waives its right to arbitration and its right to assert any defenses in an action seeking withdrawal liability and the withdrawal liability assessed against the defendant becomes fixed." *Id.* (internal citations and quotation marks omitted). "The statute provides that if an arbitration proceeding has not been initiated in the prescribed time period, the amounts demanded by the plan are 'due and owing on the schedule set forth by the plan sponsor' and the 'plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.'" *Id.* (quoting 29 U.S.C. § 1401(b)(1)).

5

*Canny*, 900 F.Supp. 583, 592 (N.D.N.Y. 1995)). See also *NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12 CIV. 2506 PAC, 2014 WL 462835, at *2 (S.D.N.Y. Feb. 5, 2014), as amended Feb. 5, 2014, appeal dismissed July 2, 2014.

The Fund has satisfied each of these elements. It is undisputed that Le Perigord was an employer under the MPPAA prior to its withdrawal from the Plan. Le Perigord was a party to a collective bargaining agreement with the Union and, as such, was obligated to make contributions to the Fund on behalf of its employees, which it did through August 31, 2015. (Pls.' 56.1 ¶ 2, 4.) Likewise, the Union notified Le Perigord of a withdrawal liability assessment against it by certified mail on two occasions, April 29, 2016 and June 3, 2016. (*Id.* ¶¶ 7, 8.) Finally, Le Perigord never requested review of or initiated arbitration of its withdrawal liability. (*Id.* ¶ 10, 11.) Accordingly, the Fund is granted summary judgment with respect to Le Perigord's withdrawal liability.

2.    **Interest, Liquidated Damages, Fees, and Costs**

The Fund also seeks interest, liquidated damages, attorneys' fees, and costs. "In any action to collect withdrawal liability 'in which a judgment in favor of the plan is awarded, the court shall award the plan,' in addition to the unpaid withdrawal liability, reasonable attorneys' fees and costs, interest, and liquidated damages." *Nat'l Integrated Grp. Pension Plan*, 938 F. Supp. 2d at 379 (internal citations omitted). Having granted the Fund summary judgment on its withdrawal liability claim, the Court also awards the Fund reasonable attorneys' fees, costs, interest, and liquidated damages.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is GRANTED. The Court respectfully directs the Clerk to terminate the motion at ECF No. 28. Plaintiffs are

directed to submit a proposed judgment, along with a detailed affidavit on the issue of reasonable attorney's fees, to the Court within 14 days of this Order. Defendants are directed to submit any objections to the proposed judgment and request for attorney's fees within 10 days of its submission to the Court.

Dated: April 9, 2018
        White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge